Good morning, may it please the court. My name is Betsy Shepard on behalf of the appellant, Robert Smith, and Mr. Smith's application for disability benefits was filed in 2007, and his date last insured for disability benefits was June 30, 2010. So that is the period of time that we're focused on in determining whether he was disabled during that time. There's been a bit of a long and winding procedural history with three different administrative hearings, and we're here today to talk about ALJ Waters' 2016 decision, which was the most recent one. Mr. Smith's treating neurologist, Dr. Anderson, opined several times during the period in issue that Mr. Smith's final impairments would prevent him from sitting, standing, and walking for a combined total of eight hours in a work day, which would be disabling, would establish disability. The ALJ did not provide the required clear and convincing reasons for discounting Dr. Anderson's opinions. The ALJ also failed to provide clear and convincing reasons for discounting Mr. Smith's testimony, which, if credited, also establishes that he was disabled during the relevant period. Ms. Schiffman, I take it your main complaint is that the ALJ did not take into consideration and give weight to Dr. Anderson, who was the treating physician. There were two bases why the ALJ found that Dr. Anderson wasn't quite accurate. One was his own contradictions, and the other was the contrary declarations of Dr. Rouse and Dr. Willis. Do you agree that there were contradictions in Dr. Anderson's relation, or do you dispute those contradictions? With regard to the manipulative limitations, how often Mr. Smith can use his hands and arms, there does appear to be a contradiction between Dr. Anderson's two different forms that he filled out. One says that Mr. Smith can't use his hands and arms for work activity, basically, and the other one says that he's able to do so constantly. That may or may not have been a mistake on Dr. Anderson's part, but even leaving out the manipulative limitations, the limitations on Mr. Smith's ability to sit, stand, and walk are the focus here. Do you want to comment? It seemed to me that Dr. Rouse found that there were symptoms missing that Dr. Anderson didn't see. Was he wrong on that? I'm sorry. It broke up a little bit there, Your Honor. Dr. Rouse, are you asking—could you please repeat the question? As I remember from my notes, Dr. Rouse found that there was a lack of symptoms that Dr. Anderson had seen, as opposed to complaints. Okay. Dr. Rouse, if I remember correctly, was the state agency reviewing doctor who never actually examined Mr. Smith, while Dr. Anderson was a treating neurologist. All right. Please go ahead. Go ahead. I'm sorry. Go ahead. It's our position that Dr. Anderson had a greater opportunity to observe Mr. Smith and his symptoms and conduct objective examinations in determining what his limitations would be. Counsel, I thought that part of the ALJ's analysis was not only was the limitations supported by objective medical evidence, but also Dr. Anderson's report was contradicted by Smith's own reporting of his ability to work, for example, and ability to drive. Can you address that point specifically? Because, as I recall, the ALJ specifically relied on Smith's own reporting. Okay. Mr. Smith was able to drive a little bit, but this is not inconsistent with Dr. Anderson's opinion that he would be able to sit and stand for at least part of a day, you know, one hour at a time, 20 minutes at a time. As far as Mr. Smith's ability to work, during the relevant period, the only work activity that Mr. Smith reported was selling auto parts at a swap meet on a very, very part-time basis, approximately one time a month. And he stopped doing that in 2008. And the earnings record supports Mr. Smith's testimony that he hardly made any money doing this and that it was not a regular and continuing activity. The ALJ found that he had a residual functional capacity to do light work as long as it didn't involve climbing up ladders or ropes or scaffolds and did not frequently have to reach overhead. What's wrong with that? Well, Your Honor, the definition of light work involves standing or walking for at least six hours in an eight-hour day, being able to lift up to 20 pounds, and while sedentary work involves standing and walking for only two hours in an eight-hour day. So based on what Dr. Anderson said, Mr. Smith could still do. He is not able to perform the functions involved in light work. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. All right. Mr. Schaubacher. Thank you, Your Honor. May it please the court. My name is Noah Schaubacher, and I represent the Acting Commissioner of Social Security in this case. The ALJ in this case considered the record as a whole and found that while Mr. Smith was limited by his impairments during the short period at issue, January 2008 to June 2010, he could still perform a range of unstilled light work. Mr. Smith engaged in a variety of activities after he allegedly became disabled, which included working. During the first two quarters of 2008, burning records demonstrate that he was working, but medical notes also indicate that he was working as late as October 2008 or January 2009 when he reported that he was working full-time, which is well into the period during which he claims to have been disabled. Mr. Smith also reported that he could prepare food, do laundry, walk, drive, and help his son with homework, which were all activities that contradicted his claims that he was totally unable to work. He also told the agency that he could lift up to 25 pounds, which is consistent with light work. As far as the medical evidence goes, Mr. Smith had degenerative changes with stenosis and radiculopathy in his neck, but he had surgery for that in February of 2009. He complained about pain in his left shoulder and some left arm numbness, arm burning, and tingling into his hands, but that resolved almost immediately post-surgery. The clinical findings both before and after that surgery indicate that Mr. Smith had very few limitations. He regularly had normal strength in all areas, although some examination records suggested that he had four out of five strength, which is a very minor weakness. He's still able to resist against light resistance, while others show that he has full strength in all of his extremities. He's able to walk and stand normally, and that's reflected in Dr. Anderson's notes almost every time that Mr. Smith was able to walk and stand normally. He also... Mr. Shavack, I think your opponent, Ms. Schiffman, is zeroing in on the inability, the claimed inability of the appellant to stand for six hours. Is there any evidence that the doctors found that he could stand and sit for six hours? I don't believe there's any positive evidence showing that, Your Honor, but none of the evidence establishes that he was unable to walk for six hours, and that's what Mr. Smith has to show. Dr. Anderson's records wholly contradict his opinions. Dr. Anderson, in one opinion, says that Mr. Smith is totally debilitated. He can't even drive at all. Meanwhile, Mr. Smith is driving around the same time. Dr. Anderson says he can't work. Mr. Smith is working around the same time. So Dr. Anderson's opinions are contradicted throughout the record, especially by Mr. Smith's own statements, as well as Dr. Anderson's records and records from Dr. Willis. All of this demonstrates that Mr. Smith was not as limited as Dr. Anderson claimed and not as limited as Mr. Smith claimed. The fact is that Mr. Smith simply can't show that he was limited to walking less than six hours. I'll also note that Mr. Smith hasn't challenged the ALJ's evaluation of the opinions from the two state agency physicians, Dr. Rouse and Dr. Griffith, both of whom agreed that Mr. Smith could perform light work with some differences between them. But the most recent opinion from Dr. Rouse, the ALJ gave more weight to and said that, which included a limitation to needing to sit and stand every hour, a limitation that the ALJ included in the RFC finding. So on that record, Your Honor, it appears that Mr. Smith is still able to work at the light exertional level and he's unable to demonstrate otherwise. All right. Thank you. Anything further? Nothing further, Your Honor. Thank you. Counsel, you've got a few minutes for rebuttal. Yes, Your Honor. As to Mr. Smith's alleged work activity during the period at issue, the treatment notes that the ALJ cited saying that he was working full time in 2008, these are part of just a medical, it says employed full time in these treatment notes, but that doesn't necessarily mean, I mean, that could have been transferred from a previous appointment. It's not. The record doesn't say that Mr. Smith stated that he was still working full time. He was not. At that point, he was able to sell auto parts at a swap meet maybe once a month. And the earnings record showed no more than about $2,000 total that he earned in the entire year of 2008. So none of this work activity was full time. I'm sorry to interrupt you. Is your opposing counsel correct when he says that Dr. Anderson said he couldn't drive or work when at the time he was describing, your client was driving and was working? I believe he was driving a little bit. I don't know that the record says exactly how much. That's a little different than the doctor saying he couldn't drive. I don't know how to explain that, Your Honor, other than Dr. Anderson in his medical source statement was addressing what Mr. Smith would be able to do over the course of an eight hour work day. And not necessarily addressing what he would be able to do a little bit of in his personal life. Yes, but the point though is the AOJ cited specific reasons supported by the record or its findings for giving Dr. Anderson's opinion little weight. And that's that Dr. Anderson's opinion was based on facts contradicted not only by the medical records but by Smith's own reporting of what he was able to do. Let me just clarify one thing that you raised. You mentioned that the October 2008 treatment notes indicating that he was employed full time is inaccurate. Who prepared those treatment notes? The AOJ cited, and this is exhibit 3F page 2, where it's a treatment note saying that he was self-employed. The AOJ cited 4F page 1, where there's a little note that says employed full time. And the AOJ cited 24F page 10, where it said employed full time. Right, right. The treatment notes that indicates he was employed full time, what was the source of that indication? Was that from Mr. Smith? It's unknown, Your Honor. It doesn't say in the record that Mr. Smith told me he was working full time. It's just part of the demographic background. But it was part of his treatment notes? Yes. All right. My question has taken you over time. Do you have any additional questions? No further questions. All right. Thank you very much both sides for your argument. In this case, the matter is submitted.
judges: HAWKINS, BEA, NGUYEN